TIMOTHY ELY v. NORFOLK SOUTHERN R. R. CO.

*Evidence—Estoppel—Proceeding to Condemn a Right of Way for a Railroad Company.*

Where, in an action for damages against a railroad company for negligence in setting fire to brush, &c., on the land condemned for its right of way, by which it was communicated to land adjoining, alleged to be plaintiff's, the records of the proceeding of condemnation were in evidence, from which it appeared that the plaintiff and two others were made parties defendant to the proceeding, and that the condemnation money was paid into Court by the petitioner, the railroad company, to await the termination of a controversy as to title to the land, and it being in proof that the land injured by the fire was the same over which the right of way had been condemned: *Held,* that said proceedings were not conclusive evidence that the land belonged to the plaintiff, rather than one of the other defendants in the proceedings to condemn.

This was a CIVIL ACTION, tried at Fall Term, 1887, of the Superior Court of PASQUOTANK County, before *Graves, J.*

The plaintiff alleged in his complaint:

1. That the defendant company, the Norfolk Southern Railroad Company, has laid a railroad track through the lands of the plaintiff for the distance of about two miles, and has cleared away the trees, bushes and other growth upon both sides of said track for a distance of fifty feet from the centre of said track.

2. That on or about the first day of October, 1885, the said defendant company entered upon the land of the plaintiff and cut the briers, reeds and undergrowth along said railroad track running through plaintiff's land, heaped the said rubbish in large piles of very inflammable matter, and carelessly directed the same to be set on fire in a very dry season, and negligently left the said fires to burn without necessary attendance.

3. That in consequence of such carelessness and negligent attention to and management of said fires along a line of a mile or more, the fire escaped from the line of said track into the adjoining woodland of the plaintiff, and burned over a large area of the same, destroying and burning up large quantities of wood and timber, and burning, in many places, large holes in the soil, destroying the value of the land, and causing sinks, in which water accumulates, rendering the surrounding land a morass unfit for pasturage or any use, to the damage of the plaintiff two thousand dollars.

The complaint contained a *second* and a *third cause of action*, alleging the same matter in nearly the same language, except that in the second it was alleged that the defendant's conduct was contrary to the statute in such case made and provided, and in the third that contrary to the statute two days' notice was not given the plaintiff in writing before the firing of the woods.

Judgment was demanded against said defendant company for the sum of two thousand dollars, &c.

The answer denied each of the allegations in the complaint.

The plaintiff tendered issues not material to be set out.

The defendant tendered the following issues:

" 1. Did the defendant enter upon plaintiff's land, cut and carelessly burn the undergrowth thereon, and negligently leave the fires burning, as alleged in paragraph two of the first cause of action in plaintiff's complaint?

" 2. Was any injury done plaintiff in consequence of such alleged carelessness and negligent conduct, as claimed in paragraph three of plaintiff's first cause of action, as set out in his complaint?

" 3. What damage, if any, was sustained by the plaintiff, by reason of the defendant's carelessness and negligence?"

*First Exception.*—These issues were refused, and the defendant excepted.

*Second Exception.*—The Court settled the issues as set out in the record, and the defendant excepted.

Testimony was then offered by plaintiff, tending to show that he owned the land, that it was woods or woodland, and tending to show that it had been set fire to negligently by defendant and burned over; that he had sustained damage.

Harvey Terry, a witness for plaintiff, testified: He knew the tract; it was the land of plaintiff—belonged to plaintiff; it was a tract of woodland, through which defendant's railroad ran. About the 1st October, 1885, he saw defendant's hands set fire to the reeds and underbrush that had been cut down on the line of the railroad; it was a very dry time; the fire got across from the railroad right of way into plaintiff's woodland that adjoined it, and burned over an area of some 250 acres of land; it destroyed about 1,000 cords of wood, worth 50 cents a cord, standing; it damaged the land itself $6 an acre by burning holes in the soil, rendering it unfit for cultivation or pasturage; he had been offered $6 an acre for the land before and since the fire.

On cross-examination, witness stated that there was no wood growing on the railroad right of way, only underbrush, and that he did not see the railroad hands put any fire on plaintiff's lands; that condemnation proceedings had been instituted to condemn a right of way through these lands, but he did not regard them as lawful; that there was some litigation pending touching the title to these lands through which the railroad ran, but that plaintiff was the owner of them.

On redirect examination, witness stated that he had been offered $6 an acre for the land before and since the burning.

This witness was afterwards permitted to explain his testimony, and said he was mistaken in saying he was offered $6 per acre since the burning.

Other witnesses testified for plaintiff that they had seen the land after the fire, and that trees were burnt down and holes were burnt in the land, &c.

John Whitehead, a witness for the defendant, testified : That he was section master of the section of defendant's railroad where the burning occurred ; he had four hands ; the railroad right of way was cleared off every year; it had been cleared off the year before the burning in question; about the 1st of October, 1885, he took his working force and cut down the briers, reeds and underbrush on the defendant's right of way, that had grown up within the year preceding, and had them set on fire; he discovered that the fire was eating its way towards the adjoining woodland, and he directed a trench to be dug around it on defendant's right of way, and earth thrown upon it, which was done; he supposed the fire was extinguished, and only saw smoke ascending as from an extinguished fire; there was no wood upon the right of way, except now and then a pile of old decayed logs that had been cut down when the road was built; Mr. Harvey Terry was not present at any time while witness was there, and witness was there all the time while the hands were there; in the evening, when he left, he had no suspicion of danger—thought he had taken every necessary precaution to suppress and extinguish the fire, and that that end was fully accomplished; the next morning, when he returned to his work, he found that the fire had burned its way under the ground and under the trench, and beyond the defendant's right of way into the woodland adjoining, and had gotten beyond his control; a heavy rain the next night extinguished the fire.

Other witnesses testified for the defendant that the land was nearly worthless before the fire, and that it had been damaged but little by the fire.

Defendant also put in evidence the record of proceedings instituted before the Clerk of the Superior Court of Pasquotank County, on the 14th day of January, 1885, to condemn the right of way for defendant's road through the lands on which the burning complained of occurred, by which pro-

ceedings it appeared that Timothy Ely, Harvey Terry and J. F. Davis were made defendants as claimants of the said land, and also that the said right of way had been duly condemned.

The following is an official endorsement, made upon the commissioner's report condemning the land by the Clerk of the Superior Court of Pasquotank County :

"Condemnation money paid into Court by petitioner, and the same held by me to await termination of controversy as to the title of the property, the same being in litigation in the Court.                         J. R. OVERMAN, C. S. C."

The defendant asked the Court to give the following instruction :

" The Court instructs the jury that the plaintiff, having shown no title to the land on which the damage is alleged to have been done, is not entitled to recover any damages in this action."

The Court refused to give the instruction, but charged the jury :

"The inquiry is as to the plaintiff's right or title to the land alleged to have been injured ; for, unless the plaintiff has some interest in the land alleged to have been injured, he will not be entitled to maintain his action. Upon this question the plaintiff was allowed to testify, without objection, that it was his land ; and the defendant has offered in evidence the record of a proceeding to condemn the right of way for its use over the lands of plaintiff and others. So there is some evidence to go to the jury that the plaintiff has title to the land ; and if the land described in that proceeding is the same land described in the complaint, the defendant is estopped to deny the plaintiff's title. The proceeding of the Court offered in evidence did not divest the title out of the plaintiff, but the title remained in the plaintiff, and by

that proceeding the defendant acquired an easement, or a right to use the land of the plaintiff for the purpose of constructing and operating a railroad over it."

*Third Exception.*—The defendant excepted to the ruling of the Court in refusing the instructions asked, and also excepted to the instructions given.

The defendant further asked the Court to instruct the jury as follows:

"The Court instructs the jury, that plaintiff, not having alleged in his complaint that the defendant set fire to any woods, the said plaintiff is not entitled to claim or recover any damages in this action under the second or third causes of action in his complaint."

*Fourth Exception.*—This was refused, and defendant excepted.

The defendant further asked the following instructions:

"The Court instructs the jury, that if they believe that the defendant set fire to the underbrush and rubbish on its own land, and if they believe said lands of the defendant were not forest lands in their natural state,  *  *  *  * the fire escaped to and damaged the woods and lands of the defendant, that that is not such a setting on fire of woods as is meant by section 52 of *The Code,* and the defendant would not be answerable in damages in this action, under that section."

This instruction was refused, and the Court charged the jury:

"That defendant's roadway ran through the woodland of the plaintiff. Such land as had been described by the witnesses was woods, in the purview of the statute; and if the defendant often cleaned its right of way—permitted reeds and briers and underbrush to grow up for a year, and then cut them down on its right of way, and set fire to it, it was a setting fire to woods, in the meaning of the statute; and if the defendant did not give the notice required, and the fire

so set out escaped to the woodland of the plaintiff adjoining the right of way of defendant, and did damage to the plaintiff, the defendant would be answerable in damages in this action, if the defendant carelessly set fire to such briers and brush at a time when it was so dry that the earth itself would burn."

And, at the request of the defendant, the Court gave this further instruction:

"The Court charges the jury that the defendant had a right to burn off the undergrowth and rubbish from its own land; and if they believed it used reasonable care in doing so, and in suppressing the fire before it reached the lands of the plaintiff, by digging a trench around it and throwing fresh earth upon it until it supposed the fire was extinguished, or by other reasonable means, and that the fire burned under and through the ground of the defendant to that of the adjoining land-owner and damaged it, such burning would not be imputed as negligence to the defendant."

And the Court added: "But if it was so dry that the land would burn, and the defendant's servants knew that it would burn and communicate to the lands of adjoining landowners, notwithstanding such ditching, it would be negligence."

*Fifth Exception.*—To the refusal to give the instruction asked and to instruction given the defendant excepted.

Verdict was rendered in favor of the plaintiff. Motion for new trial overruled, and appeal by defendant.

*Messrs. Harvey Terry* and *W. D. Pruden*, for the plaintiff. *Messrs. L. D. Starke* and *E. C. Smith*, for the defendant.

AVERY, J. (after stating the case). The Court did not err in refusing to instruct the jury that the plaintiff could not recover because he had shown no title to the land on which

the trespass was alleged to have been committed, nor in explaining to the jury that the testimony of the witness Terry, admitted without objection, was some evidence of title. But his Honor did not stop there. He added, that "if the land described in that proceeding (referring to the proceeding to condemn the right of way) is the same land described in the complaint, the defendant is estopped to deny the plaintiff's title." If the record shows that the order of condemnation applied to the land upon which the plaintiff alleges that the fire originated, then the instruction given left the jury no option or discretion. Even if the jury had discredited the testimony of the witness Terry (and we have no right to assume that they did not), still the fact is stated, as admitted, that the proceeding was instituted "to condemn a right of way *through the lands on which the burning complained of occurred.*" If, therefore, the jury adopted the view of the law applicable to the case that was enunciated by the Judge, they were bound to decide that the defendant company was concluded as to the question of title by said record. If the language quoted from the charge is not unequivocal and clearly susceptible only of the construction given, the fact that the Court, in the next sentence, assumed that the proceeding covered the same land as that described in the complaint, and explained to the jury that the effect of the order of condemnation was to give the defendant an easement and not to divest the title out of the plaintiff, leaves no doubt that the language of the Court has been interpreted according to its true import.

The third exception extends not only to the instruction refused, but to that given as a substitute. Conceding, then, that the defendant must clearly point out the error complained of, the record, as amended by consent of parties in this Court, shows that Timothy Ely, Harvey Terry and J. F. Davis were made defendants in said proceeding as claimants.

102–4

of the land, that the right of way has been condemned and the amount of the damage paid into Court "to await termination of controversy as to title of the property, the same being in litigation in this Court."

Under the provisions of the general law (*The Code*, § 1944), the petitioner in cases of this kind (whether it be a claimant or owner of the land, or the company) is required to set forth in the petition "the names and places of residence of the parties, so far as the same can, by reasonable diligence, be ascertained, *who own or have or claim to own or have estates or interests in said real estate.*" The same section requires that the petition must be served on all persons whose interests are affected by the proceeding. Section 1947 of *The Code* provides, that when there are "adverse and conflicting claimants," the Court may direct the money to be paid into Court, and proceed to determine who is entitled to receive it. In the absence of any evidence as to the provisions of the charter of the defendant company, we may assume that the petition was filed and the subsequent orders made under the provisions of the general law, as it would have been certainly proper to do so if there was no course of procedure in such cases provided for in the charter, or none that conflicted with the section referred to.

If we conclude, after a careful review of the testimony, that the plaintiff Ely and the witness Harvey Terry are not adverse claimants of the title and condemnation money, but represent one claimant under two names, there can be no doubt that, according to the record, J. F. Davis is litigating with the other two, and it has not been determined by the Courts who is the owner. Suppose, then, that Davis should begin an action precisely the same in form as that brought by the plaintiff Ely, should offer the same record of the proceedings to condemn, and the same admissions should be made as to the identity of the land described in the complaint and in the petition, would not the defendant company

be estopped to deny the title of Davis, if the law has been correctly stated by the Judge in this case? But, we suppose, if it is admitted that we have properly construed the language quoted from his Honor's charge, it will not be contended that a record which shows certainly that Davis and Ely both claim title to a tract of land, and the litigation between them is not yet determined, shuts the mouth of the defendant company, a party to the same record, to deny that Ely is the owner. It is not necessary to cite authority upon this point, because the only question raised on the argument was whether the interpretation that we have given to the Judge's charge is correct. Indeed, the record shows conclusively that the title was not adjudged to be in the plaintiff.

The defendant's counsel contended, too, that there was error in the refusal of the Court to submit any other issue than that passed upon by the jury, and which, with the answer, was as follows:

"Has the plaintiff sustained damage by the default and negligence of the defendant? Yes."

Without deciding or even discussing the point, we may suggest that an objection may be obviated on the next trial by framing, under each separate cause of action as to which conflicting testimony may be offered by the parties, an appropriate issue.

For the error pointed out the judgment must be reversed and a new trial had in the Court below.

Error.